# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

**CIVIL ACTION NO. 08-459-JBC**
**(Related action: Lexington Civil Action No. 08-510)**

**GMAC MORTGAGE, LLC,**                                              **PLAINTIFF,**

**V.**                        **MEMORANDUM OPINION AND ORDER**

**HEATHER BOONE MCKEEVER, ET AL.,**                      **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion for summary judgment by the remaining defendant, Mortgage Electronic Registration Systems, Inc. ("MERS") in an action styled *Haffey v. MERS*, Lexington Civil Action 08-510, which is part of this consolidated action. R. 20, R. 21. For the reasons below, the court will grant the motion.

**I.**      **Background**

This case is one of three pending consolidated actions involving property located at 3250 Delong Road in Lexington, Kentucky.[1] Heather McKeever and Shane Haffey, a married couple, brought this action in Fayette Circuit Court on November 21, 2008. Lexington Civil Action 08-510, R. 1, Attach. 3. The defendants removed the case to federal court on December 15, 2008. *Id.* at R. 1. The claims against the other defendant, GMAC Mortgage, LLC, were dismissed on

---

[1]*See* Lexington Civil Actions No. 08-459, 08-510, and 09-362. Two other consolidated actions, 08-456 and 09-255, have been dismissed.

September 4, 2009.  R. 17.  MERS moved for summary judgment on September 17, 2009.  R. 20.

## II. Analysis

The plaintiffs have failed to establish numerous elements of their claims against MERS, and summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### A. Settlement agreement

MERS contends that a settlement agreement between Bank of the Bluegrass and McKeever bars all of the plaintiffs' claims.  R. 21 at 6.  In response, the plaintiffs point to their answer/counter-claim/third-party complaint in a related consolidated case, R. 17 in Lexington Civil Action 09-362, which "condemn[s] in totality" that settlement agreement.  Lexington Civil Action 08-510, R. 29 at 2.

#### 1. Validity of the settlement agreement

A valid settlement agreement can be set aside only for fraud or mutual mistake of fact.  *Estate of Jones v. Comm'r*, 795 F.2d 566, 573-74 (6th Cir. 1986).  First, the plaintiffs have not provided any support for their contention that McKeever was "fraudulently induced" to enter into the settlement agreement. Lexington Civil Action 09-362, R. 17 at 28; *see also Valente v. Univ. of Dayton*, No. 08-cv-225, 2010 U.S. Dist. LEXIS 195, at *4 (S.D. Ohio Jan. 4, 2010)

(explaining that once the moving party meets its initial burden of showing there is no genuine issue of material fact, the non-moving party must go beyond the pleadings to show that there is a genuine issue for trial) (citation omitted).

In addition, the Bank of the Bluegrass's disclosure of this agreement did not invalidate the agreement. A confidential settlement agreement is not privileged and "the mere fact that parties agree to maintain the confidentiality of their agreement does not serve to shield the information from discovery . . . litigants may not shield otherwise discoverable information from disclosure to others merely by agreeing to maintain its confidentiality." *Am. Guarantee and Liab. Ins. Co. v. CTA Acoustics, Inc.,* No. 05-80, 2007 U.S. Dist. LEXIS 26485, at *12 (E.D. Ky. 2007).

### 2. Terms of the agreement

The terms of the agreement bar McKeever's claims. Under Kentucky law, which the parties agreed would govern the settlement agreement, an agreement to settle legal claims is treated as a contract subject to the rules of contract interpretation. *3D Enters. Contracting Corp. v. Louisville and Jefferson County Metro. Sewer Dist.*,174 S.W.3d 440, 448 (Ky. 2005). The aim of settlement is to effectuate the intention of the parties. *Id*. In the absence of ambiguity, courts look only as far as the four corners of the settlement agreement to determine the parties' intentions. *Id.* (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)). Here, the agreement provides that

> [a]ll parties to this Settlement Agreement (Bank of the Bluegrass & Trust Company and Heather McKeever Haffey), their officers, agents, and

3

successors in interest, specifically release and forever discharge each other from any and all claims, actions, liability, causes of action of any kind, in law and in equity, arising out of the above referenced loan.

Lexington Civil Action 08-510, R. 21, Attach. 1 at 2. In exchange for this mutual release, Bank of the Bluegrass paid McKeever $2,500. *Id.* Thus the settlement agreement bars McKeever's claims against MERS "arising out of the above referenced loan." *Id.* Although MERS has not articulated a basis for binding Haffey, a non-signatory, to the agreement, the court need not reach that issue because the plaintiffs' claims fail on other grounds.

**B. Count 1 and Count 2: Truth in Lending Act (TILA) 15 U.S.C. §§ 1601 et. seq., the Home Ownership and Equity Protection Act (HOEPA), and the Kentucky Predatory Lender Act, Ky. Rev. Stat. Ann. § 360.100.**

The Truth in Lending Act ("TILA") aims to ensure the meaningful disclosure of credit terms so that consumers can make informed decisions and to protect consumers from inaccurate and unfair credit billing and credit card practices. *See* 15 U.S.C. § 1601(a). TILA requires creditors to disclose certain information before consummating a transaction and defines a creditor as a person who both (1) regularly extends consumer credit and (2) is the entity to whom the debt arising from the consumer credit transaction is initially payable "on the face of the evidence of indebtedness, by agreement." 15 U.S.C. § 1602(f).

**1. Disclosure requirements**

Despite alleging that the defendants "jointly and severally" violated TILA and its implementing regulations through failing to disclose required information, the

plaintiffs have not shown that MERS was a creditor under TILA. Specifically, the plaintiffs have not alleged, nor does the record does suggest, that MERS was the entity to whom the debt was originally payable: Even construing the facts in a light most favorable to the plaintiffs, there is no indication that MERS was involved in the origination of the loan. It follows that, because MERS was not a creditor under the statute, it was not obligated to make the disclosures that are the subject of Count One.

The plaintiffs have also failed to articulate a basis for assignee liability for any TILA disclosure violation. Section 1641(a) provides that an assignee may be held liable for a creditor's TILA disclosure violations where the violation "is apparent on the face of the disclosure statement," including (1) an incomplete or inaccurate disclosure/document or (2) a disclosure that fails to use required terms. *See* 15 U.S.C. § 1641(a). The plaintiffs have not alleged, either in their complaint or in subsequent filings, that the alleged TILA violations were either apparent on the face of a disclosure statement or that they were incomplete or inaccurate, and TILA does not impose a duty upon assignees to determine whether appropriate disclosures were made. *See Parker v. Potter*, 232 Fed. Appx. 861, 865 (11th Cir. 2007). Thus the plaintiffs cannot sustain their claims on the basis of assignee liability.

Finally, the plaintiffs' claims fail due to TILA's one-year statute of limitations. This provision, which also applies to the plaintiffs' HOEPA claims, provides that

"[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The plaintiffs have not argued that this statute of limitations should be tolled for any reason. The relevant transaction occurred in May 2007, and the instant lawsuit was filed on November 21, 2008. Accordingly, the plaintiffs' claims for failing to comply with TILA and HOEPA's disclosure requirements are barred by the applicable statute of limitations, entitling MERS to a judgment as a matter of law.

### 2. Rescission

The plaintiffs also allege that they rescinded the loan transaction and that the defendants should be held liable for ignoring this rescission. Specifically, the plaintiffs allege that their letters to GMAC and MERS automatically voided any security interest in their property and the plaintiffs' obligation to pay finance and other charges. Lexington Civil Action 08-510, R. 1, Attach. 3 at ¶ 37, ¶ 42, ¶ 43. This allegation is based on a misreading of TILA's rescission provisions, however.

TILA provides that when a loan made in a consumer credit transaction is secured by the consumer's principal dwelling and the creditor fails to comply with certain disclosure requirements, then the consumer may rescind the transaction up to three years after the consummation of the transaction or until the property is sold, whichever occurs first. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). In October 2008, McKeever sent a letter to MERS in which she stated that she was

6

exercising her right to rescind and that any security interest MERS had in her home was therefore void. Lexington Civil Action 08-510, R. 1, Attach. 3 at 57. This letter did not have the effect of rescinding the loan transaction, however. Where the lender or its assignees contest the basis for rescission "it cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any." *Yamamoto v. Tampon*, 329 F.3d 1167, 1172 (6th Cir. 2003). Rather, a security interest becomes void only when the right to rescind is acknowledged by the creditor or deemed valid by an appropriate decision-maker, neither of which has happened here. *See Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002). Furthermore, because MERS no longer claims an interest in the subject property, the court need not address whether the transaction should now be rescinded. *See* Lexington Civil Action 08-510, R. 30, Attach. 1 at 3.

### 3. Kentucky Predatory Lending Act

The plaintiffs' claim under Ky. Rev. Stat. Ann. § 360.100 fails as a matter of law because the instant loan was for $1,000,000 and the statute applies to loans in which the principal amount of the loan is between $15,000 and $200,000. Ky. Rev. Stat. Ann. 360.100(1)(a)(1) (LexisNexis 2010).

### C. Count 3: Real Estate Settlement Procedures Act 12 U.S.C. §§2601 et. seq.

The allegations in this count were directed at GMAC, not MERS. The

7

plaintiffs' RESPA claim stems from GMAC's alleged failure to respond to a qualified written request pursuant to 12 U.S.C. § 2601. Because the allegations do not involve conduct by MERS, and the plaintiffs have not articulated a basis for holding MERS liable for GMAC's conduct, there is no genuine issue of material fact with respect to this count, and MERS is entitled to a judgment as a matter of law.

> **D.** **Count 4: Defamation of Title and Violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, and the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681**

First, in order to maintain a claim for defamation of title, a plaintiff must show that the defendant "knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging plaintiff's property title and must have pled and proven that they had incurred special damages resulting therefrom." *Montgomery v. Milam*, 910 S.W.2d 237, 240 (Ky. 1995). The pleadings and other filings fail to meet these basic requirements, and MERS contends that no evidence exists to support this claim. R. 30 at 8. To date, the plaintiffs have not set forth specific facts showing that there is a genuine issue for trial with respect to their defamation claims, and therefore this claim fails. *See Parsons v. FedEx Corp.*, 360 Fed. Appx. 642, 646 (6th Cir. 2010) (noting that once the movant meets its initial burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial) (citations omitted).

Second, the plaintiffs have not stated a claim against MERS under the Fair

8

Debt Collection Practices Act ("FDCPA") or the Fair Credit Reporting Act ("FCRA") . Generally, the FDCPA aims to eliminate abusive debt collection practices, and the FCRA regulates the collection and dissemination of consumer credit information. *See generally,* Fair Debt Collection Practices Act, Pub. L. No. 90-321, 82 Stat. 146 (1968); Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq* (2010). The plaintiffs allege that "the defendants" were "fraudulently and illegally attempting to collect on the Note" and "failed to release the mortgage" despite the alleged rescission of the mortgage. Lexington Civil Action 08-510, R. 1, Attach. 3 at 23. Although the plaintiffs believe MERS and GMAC were "jointly and severally liable for damages," their allegations indicate that it was GMAC that serviced the loan (*id.* at R. 1, Attach.3 at ¶ 21) and that attempted to collect a debt from them (*id.* at ¶ 23, 37, 38). GMAC is no longer a party to this lawsuit, however, and the plaintiffs have not established any factual basis for holding MERS liable under the FDCPA or the FCRA. Accordingly, because no genuine issue of material fact exists regarding the plaintiffs' FDCPA and FCRA claims as to MERS, Count Four fails as a matter of law.

### E. Count Five: Unfair Trade Practices Act, Ken. Rev. Stat. Ann. § 365 (LexisNexis 2010)

Because the plaintiffs' claims against MERS for violating TILA, HOEPA, RESPA, FDCPA, and the FCRA fail, these claims cannot serve as a basis for liability under the Kentucky Unfair Trade Practices Act, and this claim fails as a matter of law.

### F. Count Six: Breach of Fiduciary Duty

The plaintiffs allege that MERS owed them a fiduciary duty due to its role as a "Lender[]," and that this duty was "separate and apart from" the actions of its "agent," Bank of the Bluegrass. Although the plaintiffs repeatedly state that an entity other than Bank of the Bluegrass was the "True Lender," even construing the facts in a light most favorable to the plaintiffs, there is no indication that MERS served as a lender in this transaction. Rather, the record indicates that MERS was an assignee of the plaintiffs' mortgage, and under Kentucky law a mortgagee-mortgagor relationship does not typically give rise to a fiduciary relationship. *Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3d 878, 893 (6th Cir. 2002). Accordingly, there is no genuine issue of material fact with respect to count six, and MERS is entitled to a judgment as a matter of law on this claim.

### G. Counts Seven and Eight: Fraud Claims

The plaintiffs have failed to make a showing sufficient to establish the existence of the elements of their fraud claims, for which they would bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323. Kentucky law requires a party claiming fraud by misrepresentation to show the following by clear and convincing evidence: (a) a material misrepresentation by the defendant; (b) which was false; (c) which was known to be false or made recklessly; (d) which was made with inducement to be acted upon; (e) that the plaintiff acted in reliance on the misrepresentation; and (f) that reliance caused the plaintiff injury. *United*

*States Achievement Acad., LLC v. Pitney Bowers, Inc.,* 458 F. Supp. 2d 389, 395 (E.D. Ky. 2006). As noted by MERS, "the record is completely devoid of any representation by MERS to [p]laintiffs, let alone one that would support plaintiff's claim for fraud against MERS." R. 30 at 10.

Similarly, the plaintiffs fail to establish the basic elements of their fraud-by-omission claim. In alleging fraud by omission, a plaintiff must show that the defendant owed a fiduciary duty to disclose facts to the plaintiff either because (1) the defendant owed a fiduciary duty to the plaintiff; (2) a statute imposed such a duty; (3) the defendant had superior knowledge about facts essential to a transaction and the plaintiff reasonably relied on the defendant to disclose that knowledge; or (4) because the defendant partially disclosed relevant facts, resulting in communication that was materially misleading. *Gresh v. Waste Servs. of Am.*, 311 Fed. Appx 766, 772 (6th Cir. 2009). As noted *supra*, the facts do not indicate the existence of a relationship between MERS and the plaintiffs that would give rise to a fiduciary duty, nor have the plaintiffs shown that the other three circumstances apply here.

Thus, the plaintiffs have failed to put forth specific facts showing there is a genuine issue for trial with respect to their fraud claims against MERS. Accordingly, summary judgment for MERS is appropriate with respect to these counts. *See Celotex,* 477 at 324 (explaining that Rule 56(e) requires a nonmoving party to go beyond the pleadings and to put forth "specific facts showing that there

is a genuine issue for trial").

> **H. Count Nine: Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. 367.110 *et. seq.***

The plaintiffs allege that the defendants "committed false, misleading or deceptive acts in their loan transaction," yet have not provided any evidence indicating that MERS specifically did so. *See Hartsel v. Keys,* 87 F.2d 1472, 1477 (6th Cir. 1996) (explaining that a plaintiff must present evidence on which the trier of fact could find for the plaintiff). MERS contends that no evidence exists that would give rise to a violation of the Act. R. 30 at 11-12 The pleadings and other filings indicate that MERS became an assignee of the mortgage in May 2007, and that MERS transferred its interest in the mortgage to Deutsche Bank in September 2009. R. 30 at 12; *see also* Lexington Civil Action 08-456. These same materials lack any support for the plaintiffs' legal conclusion that MERS committed "false, misleading or deceptive acts." Because the plaintiffs have not put forth specific facts indicating that MERS violated the Act, their claim fails. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (noting that a plaintiff "may not rest upon the allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial) (citation omitted).

> **I. Count Ten: Racketeer Influenced Corrupt Organizations Act (RICO), 8 U.S.C. 1961 et. seq.**

The plaintiffs allege that the "[d]efendants" agreed to "deceive" the plaintiffs; "have and continue to collude together to achieve unlawful aims by

12

unlawful means"; and are "co-conspirators" who "took overt acts to accomplish their illegal acts and have clearly demonstrated their intention to break the law, thereby 'breathing together' in their fraudulent and illegal acts." Lexington Civil Action 08-510, R. 1, Attach. 3 at ¶ 59. Because the plaintiffs rely on legal conclusions and fail to articulate any facts indicating that MERS committed any acts in violation of this statute, they have failed to establish a triable issue with respect to this claim. *See Celotex*, 477 U.S. at 323 (noting that one of the purposes of summary judgment is to isolate and dispose of factually unsupported claims).

### J. Count Eleven: Breach of Contract

The plaintiffs have failed to set forth sufficient evidence establishing that MERS breached any contractual obligation or that any alleged breach resulted in any harm to the plaintiffs. Under Kentucky law, a breach-of-contract claim requires (1) the existence of a valid contract; (2) breach by the defendant; and (3) damage resulting from the breach. *Sudamax Industria e Comercia de Cigarres, Ltda., v. Buttes,* 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007). Here, the plaintiffs allege that the defendants "materially breached the express and implied contracts pursuant to the loan agreement and mortgage" by their "acts and omissions." Lexington Civil Action 08-510, R. 1, Attach. 3 at ¶ 60. Specifically, the plaintiffs allege that the following acts constituted breaches of contract: failing to issue certain TILA disclosures, incorrectly dating loan documents and the mortgage, and "conspiracy

13

and fraudulent acts" in relation to the identity of the "True Lender and Mortgagee . . .." Lexington Civil Action 08-510, R. 1, Attach. 3 at ¶ 60.  MERS contends that it did not have a direct contractual relationship with the plaintiffs, and that accordingly no breach or harm to the plaintiffs as a result of any breach could have occurred.  *See* R. 30 at 13.  The plaintiffs have not identified any specific facts refuting this contention.  Accordingly, there is no genuine issue of material fact with respect to this claim, and summary judgment is appropriate.  *See Anderson*, 477 U.S. at 249.

### K. Count Twelve: Kentucky Financial Services Code, Ky. Rev. Stat. Ann. 286 (LexisNexis 2010)

The plaintiffs allege that in violation of the Kentucky Financial Services Code ("KFSC"), their loan was "obtained and based in deception and fraud," that it was made with a "concealed and unknown" lender, and that that lender is "operating illegally" in Kentucky.  None of these allegations appears to be directed at MERS, however.  Morever, MERS alleges that the plaintiffs have not shown and cannot show that MERS is a "bank, mortgage company, or is otherwise subject to the KFSC."  R. 30 at 13.  The plaintiffs have not put forth any facts disputing this allegation, nor have they alleged any facts indicating that MERS was involved in the origination of the loan or that MERS served as the "true" lender.  Accordingly, there is no genuine issue of material fact regarding the applicability of the KFSC to MERS, and this claim fails.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that the motion for summary judgment by MERS, R. 20, is **GRANTED**.

A judgment in this case will issue separately.

Signed on  June 29, 2010

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY