**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 08-459-JBC
(Related action: Lexington Civil Action No. 09-362)**

**GMAC MORTGAGE, LLC,**                                                                     **PLAINTIFF,**

**V.**               **MEMORANDUM OPINION AND ORDER**

**HEATHER BOONE MCKEEVER, ET AL.,**                               **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion (R. 53 in Lexington Civil Action 08-459) of third-party defendants Bank of the Bluegrass ("BoB"), Bill Allen, Mark Heron (here collectively "BoB"), and Jennifer Frye to dismiss the third-party complaint in an action styled *Deutsche Bank & Trust Company of the Americas v. Haffey, et. al.*, Lexington Civil Action 09-362, which is part of this consolidated action. For the reasons below, the court will grant the motion

**I.    Background**

This case is one of two remaining consolidated actions involving property located at 3250 Delong Road in Lexington, Kentucky.[1] Deutsche Bank brought this foreclosure action against Heather McKeever and Shane Haffey, a married couple, on November 12, 2009. McKeever filed an answer/counter-claim/third-party

---

[1] The other remaining action is the lead case, Lexington Civil Action 08-459. The other consolidated cases have been dismissed. *See* Lexington Civil Action 08-456, 08-510, and 09-255.

complaint naming the instant third-party defendants, among others. *Id.* at R. 17. The instant third-party defendants have moved to dismiss the third-party complaint.

## II. Analysis

### A. Claim-splitting

BoB's argument of claim-splitting is not persuasive. In the context of another consolidated case, Lexington Civil Action 09-255, McKeever and Haffey sued BoB and the same employees named in the third-party complaint, raising similar allegations of fraud and violations of state and federal law. McKeever and Haffey have since voluntarily dismissed that case. BoB now maintains that the instant third-party claims should have been brought against BoB in the context of one of the other consolidated cases "if at all," and cites *The Louisville Trust Co. v. Smith* in support of its assertion that a party is required to bring their "whole case when filing suit." 330 F.2d 483, 486 (6th Cir. 1964). The consolidation of these cases, however, undermines BoB's arguments regarding judicial economy and prolonged litigation. See *Twaddle v. Diem*, 200 Fed. Appx. 435, 438 (6th Cir. 2006) (noting that the potential burdens of dual litigation would be addressed by consolidation). Accordingly, BoB has not shown that dismissal is appropriate due to claim-splitting.

### B. Settlement Agreement

McKeever's claims against BoB are barred by the settlement agreement between them. BoB and McKeever entered into the agreement on July, 29, 2008.

The agreement provides as follows:

> All parties to this Settlement Agreement (Bank of the Bluegrass & Trust Company and Heather McKeever Haffey), their officers, agents, and successors in interest, specifically release and forever discharge each other from any and all claims, actions, liability, causes of action of any kind, in law and in equity, arising out of the above referenced loan.

Lexington Civil Action 09-255, R. 7.[2] In exchange for this mutual release, BoB paid McKeever $2,500. *Id.*

McKeever alleges that the settlement agreement is invalid because she was fraudulently induced to enter into the agreement. Specifically, she alleges that she believed that the Bank was the lender and holder of her note. She also alleges that the settlement agreement stated a fraudulent closing date of the loan as May 14, 2007.

A valid settlement agreement can be set aside only for fraud or mutual mistake of fact. *Estate of Jones v. Comm'r*, 795 F.2d 566, 573-74 (6th Cir. 1986). Under Kentucky law, which the parties agreed would govern their

---

[2] A document that is not formally incorporated by reference or attached to a complaint, such as the settlement agreement, may still be considered part of the pleadings. This occurs when a document is referred to in the complaint and is central to the plaintiff's claim. *See Greenberg v. Rossman*, 177 F.3d 507, 514 (6th Cir. 1999) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). Because McKeever's fraudulent inducement claim alleges that the settlement agreement contains an incorrect loan date, and that in turn constitutes an act of fraud, that agreement is central to her claims. Similarly, given her breach of contract claims, the court has also considered the loan and mortgage in ruling on this motion. Given the centrality of these documents to McKeever's claims, consideration of these additional documents does not require converting the instant motion to dismiss into one for summary judgment.

3

settlement agreement, in order to establish a claim for fraud a plaintiff must prove: (1) a material misrepresentation; (2) which is false; (3) which was known to be false, or made recklessly; (4) which was made with an inducement to be acted upon; (5) which is acted upon in reliance thereon; and (6) which causes injury. *See United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky. 1999) (citation omitted).

McKeever does not allege that at the time she entered into the settlement agreement, BoB represented that it was still the holder of the loan note. *See, e.g.,* R. 17 at ¶ 68. Where a party claiming fraudulent inducement does not rely on any misstatement by the other party, a claim for fraudulent inducement does not lie. *The First Capital Bank of Ky. v. Hamman*, No. 08-646, 2010 U.S. Dist. LEXIS 53724, at *8 (W.D. Ky. June 1, 2010). In addition, McKeever alleges that the settlement agreement "states a fraudulent closing date of the loan as May 14, 2007," yet the actual language of the agreement states that the loan transaction occurred "*on or about* May 14, 2007." Lexington Civil Action 09-255, R. 7 (emphasis added). Thus, even taking the facts alleged as true, the date contained in the settlement agreement did not constitute a material misrepresentation.

Moreover, McKeever's allegations with respect to the settlement agreement fail to meet the particularity requirements of Fed. R. Civ. P. 9(b). McKeever alleges in Count Eleven that the "deceptive acts" of the "Defendants" in inducing her to enter into the settlement agreement and as to a "multitude of misrepresentations in the execution of such," including but not limited to the "true identity of the Lender

4

and Mortgagee"; "the Securitization of the Note"; "falsified documents"; and "backdated documents" constitute fraudulent misrepresentation. R. 17 at ¶ 165. Rule 9(b) of the Federal Rules of Civil Procedure requires that a plaintiff allege the "time, place, and content of the misrepresentation on which he or she relied," and that when a complaint involves multiple defendants, "each defendant's role must be particularized with respect to their alleged involvement in the fraud." *See Coffey v. Foamex, L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993); *Anderson v. Pine South Cap., LLC*, 177 F. Supp. 2d 591, 596-97 (W.D. Ky. 2001). McKeever's vague and general references fall short of that particularity requirement.

Thus, because she has not pled the elements of fraud or met the pleading requirements of Rule 9(b), McKeever fails to state a claim upon which relief can be granted with respect to setting aside the settlement agreement. Accordingly, the terms of the agreement bar McKeever's claims, which arise out of the loan transaction.

### C. Individual claims

Even in the absence of the settlement agreement, McKeever cannot sustain her claims because her pleadings fail to state a claim for relief that is plausible on its face and do not comply with the pleading requirements of Rule 8 and, where applicable, Rule 9 of the Federal Rules of Civil Procedure. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that factual allegations must be enough to raise a right to relief above the speculative level and that the pleading

5

must contain more than a statement of facts that merely creates a suspicion of a cognizable right of action) (citations omitted).

### 1. Count One: Breach of contract and rescission

McKeever alleges that the defendants "breached the express and implied contracts pursuant to the Loan Agreement and Mortgage" by failing to provide her with notice that her loan would be securitized, by failing to provide her with a notice of a right to cancel and other TILA disclosures, by backdating the loan documents and mortgage, and by "fraudulently inducing" her to enter into the settlement agreement. R. 17 at ¶ 126-129.

McKeever has not identified any provisions of the loan note or mortgage or any other contract that she believes has been breached. Even accepting her allegations as true, it is not clear how backdating loan documents or failing to provide TILA disclosures would constitute a breach of contract. Moreover, McKeever has not articulated why rescission would be an appropriate remedy for any alleged breach. *See C. C. Leonard Lumber Co. v. Reed*, 314 Ky. 703, 705 (Ky. 1951) (noting that rescission will not be allowed for a slight or casual breach of the contract, or even for a substantial breach, unless the former status of the parties can be restored).

Thus, because McKeever's claim fails to create a "reasonable inference that the defendant is liable for the conduct alleged," her claim for breach of contract and rescission fails. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## 2. Counts 9, 10, 11, and 14: Fraud Claims

The essence of McKeever's fraud claims against BoB is that BoB concealed the "true lender," and that BoB committed fraud by transferring the loan note and mortgage. She asserts that the loan was "table-funded,"[3] but does not articulate any facts that led her to this conclusion. Moreover, the loan documents provided that BoB could transfer the note and the security interest, and the mortgage expressly contemplated that MERS would be the lender's nominee. *See* Lexington Civil Action 09-362, R. 1, Exh. A at 1 ("I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"); Exh. B. at 3 (noting that MERS would hold legal title as the lender's nominee); Exh. B. at 11 ("The Note or a partial interest in this Note (together with the Security Instrument) can be sold one or more times without prior notice to Borrower."). McKeever has not identified any representations by BoB that conflict with these provisions. McKeever thus fails to plead facts in support of her claim for fraud by

---

[3]"Some mortgage brokers process loans and close loans in their own names. However, at or about the time of settlement, they transfer these loans to lenders that simultaneously advance funds for the loans. This transaction is known in the lending industry as "table-funding." In table-funded transactions, the mortgage broker does not furnish the capital for the loans. Instead the lender provides the capital and, immediately after the loan is consummated, the mortgage broker delivers the loan package to that lender, including the promissory note, mortgage evidence of insurance, and assignments of all rights the mortgage broker held." U.S. Department of Housing and Urban Development, Disclosure of Fees Paid to Mortgage Brokers; Proposed Rule and Notice of Proposed Information Collection Requirements, *http://www.hud.gov/offices/hsg/ramh/res/mrgbrkrl.cfm.*

misrepresentation.

McKeever also alleges that "The Lender" conspired to conceal the "True Lender" at the closing and that "The Lender" had a duty to "disclose material facts," including the "true nature of their relationship," and that this omission induced her to enter into the loan transaction. R. 17 at ¶ 158. These legal conclusions are not entitled to a presumption of truth, nor are they accompanied by sufficient factual enhancement indicating that BoB violated any duty to disclose or that it partially disclosed information that was materially misleading, much less with the particularity required by Rule 9(b). *See Gresh v. Water Servs. of America, Inc.*, 311 Fed. Appx. 766, 772 (6th Cir. 2009); Fed. R. Civ. P. 9(b).

Finally, McKeever's claims for fraudulent inducement and for violations of the Kentucky Residential Mortgage Fraud Act, Ky. Rev. Stat. Ann. § 286.8-990, fail because she appears to rely on her fraud claims as the basis for these claims, and her fraud claims fail for the reasons discussed above.

### 3. Counts Two, Three, and Four: TILA, HOEPA, and RESPA claims

McKeever seeks statutory damages for BoB's alleged failure to provide certain disclosures pursuant to the Truth-in-Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA") during the loan transaction. Claims for damages under TILA and HOEPA are governed by 15 U.S.C. § 1640(e), which provides that any claim under that section must be brought within one year from the date that the violation occurred. The instant lawsuit was not initiated

8

within that time-frame.

McKeever states that "any and all claims involving [BoB] are raised as affirmative defenses and set offs to a foreclosure and that the third[-]party complaint stems from the defense of a foreclosure." R. 75 at 3. Accordingly, she contends that the "various" statutes of limitation do not apply. Section 1640(e) provides an exception only "in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." 15 U.S.C. 1640(e). "The right to set off allows parties that owe each other money to apply their mutual debts against each other." *Nix v. Option One Mortgage Co.*, No. 05-3685, 2006 U.S. Dist. LEXIS 2289, at *21 (D.N.J. Jan. 19, 2006). The doctrine of recoupment allows a creditor that owes a debt to a debtor to reduce the amount of its debt by the amount of a debt owed by the debtor to the creditor, and applies only where two debts arise out of the same transaction. *Id.* Here, McKeever's claims against BoB were not asserted as an offset to an attempt to collect a debt – rather, Deutsche Bank is the entity attempting to collect a debt, and the claims against BoB were asserted offensively. Accordingly, McKeever's claims for statutory damages against BoB due to non-disclosure under TILA and her HOEPA claims are barred by the one-year statute of limitations.

Finally, McKeever alleges several violations of the Real Estate Settlement and Procedures Act (RESPA). She claims that, in violation of 12 U.S.C. § 2607 of the

RESPA, there were various undisclosed and unauthorized fees and commissions, kickbacks, yield spread premiums collected; broker commissions paid by the lender to the broker for arranging the loan at a higher interest rate than that lender normally would have charged; and that certain finance charges were understated. R. 17 at ¶ 136. She does not indicate who paid and accepted kickbacks, fees, or commissions; what those kickbacks, fees, and commissions were; or the circumstances surrounding these transactions. *See Silvas v. GMAC Mortgage, LLC*, No. CV 09-265, 2009 U.S. Dist. LEXIS 118854, at *33-34 (D. Ariz. Dec. 1, 2009) (dismissing claims based on similar deficiencies). These legal conclusions thus lack sufficient factual support. *See Iqbal*, 129 S.Ct. at 1949 (explaining that a complaint does not suffice if it contains bare assertions devoid of further factual enhancement) (citations omitted). In addition, she does not indicate when these allegedly illegal transactions occurred. Section 2614 requires that any action for a violation of § 2607 must be brought within one year from the date of occurrence of the violation. *See* 12 U.S.C. § 2614. Thus, to the extent that these alleged transactions occurred in conjunction with the disbursement of the loan transaction, her claims are also time-barred.

McKeever counters that the statute of limitations should be equitably tolled due to "fraudulent concealment." R. 75 at 3-4. Although she alleges in her response that BoB "fraudulently concealed the identity of the lender making the loan," her fraud claims fail, as discussed above. Moreover, McKeever cannot rely

on the same factual allegations to show that BoB violated federal statutes – namely that BoB failed to make required disclosures pursuant to TILA, HOEPA, and RESPA – as to toll the limitations period for those statutes. Otherwise, equitable tolling would apply in every case where a plaintiff alleges a violation of TILA, HOEPA and RESPA, and would render the statutes of limitation meaningless. *See Gates v. The Ohio Sav. Bank Assoc.,* No. 06-678, 2007 U.S. Dist. LEXIS 68509, at *13 (N.D. Ohio Sept. 17, 2007) (explaining that mere non-disclosure by a defendant is insufficient to establish fraudulent concealment) (citations omitted); *Jacob v. Aurora Loan Servs.*, No. 10-1789, 2010 U.S. Dist. LEXIS 65999, at *8-9 (N.D. Cal. July 2, 2010) (explaining that violations of TILA, HOEPA and RESPA do not automatically entitle a plaintiff to equitable tolling).

Finally, to the extent that McKeever seeks to rescind the transaction due to a failure to disclose under TILA, it is not clear that claim is directed at BoB. McKeever's repeated references to the defendants collectively makes it difficult to determine which defendant she intends to implicate in each claim. Here, McKeever has not pled facts indicating that BoB is in a position to effectuate rescission, and therefore to the extent she sought to rescind the loan as to BoB, that claim will be dismissed.

### 4. Counts Five and Six: Defamation of Title and Violations of the FDCPA and FCRA

In order to maintain a claim for defamation of title, a plaintiff must show that the defendant "knowingly and maliciously communicated, orally or in writing, a

false statement which has the effect of disparaging plaintiff's property title and must have pled and proven that they had incurred special damages resulting therefrom." *Montgomery v. Milam*, 910 S.W.2d 237, 240 (Ky. 1995). Here, McKeever asserts that the assignment of the mortgage to MERS was "a blight on McKeever's title the day it was filed." Lexington Civil Action 09-362, R. 17 ¶139. McKeever's allegation is thus devoid of any facts that would support the basic elements of this claim, and her assertion that the assignment itself constituted defamation of title is merely a legal conclusion.

With respect to the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"), McKeever fails to identify any provisions of either statute that she believes was violated. Generally speaking, the FDCPA aims to eliminate abusive debt collection practices, and the FCRA regulates the collection and dissemination of consumer credit information. *See generally,* Fair Debt Collection Practices Act, Pub. L. No. 90-321, 82 Stat. 146 (1968); Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq* (2010). Again, in lieu of facts, McKeever has simply stated several legal conclusions, including that BoB "conspired to conceal the 'True Lender' at closing," and she implies that the alleged securitization of the note was illegal, she invokes clearly no statute in support of this allegation. R. 17 at ¶144. Such conclusory statements cannot sustain these causes of action. *See Iqbal*, 129 S.Ct. at 1950.

### 5. Count Seven: Kentucky Consumer Protection Act

McKeever's claim under the Kentucky Consumer Protection Act because that statute does not apply to real estate transactions. *See* Ky. Rev. Stat. Ann. § 367.110 et. seq. (LexisNexis 2010); *Todd v. Ky. Heartland Mortgage, Inc.,* No. 2002-CA-002038, 2003 WL 21770805, at *3 (Ky. Ct. App. Aug. 1, 2003) (citing *Craig v. Keane*, 32 S.W.3d 90, 90-91 (Ky. Ct. App. 2000)).

### 6. Counts Eight, Thirteen, and Seventeen: Breach of Fiduciary Duty and Violations of the Kentucky Financial Services Code

McKeever fails to state a claim for breach of fiduciary duty because she has not pled facts indicating the existence of a fiduciary relationship between her and BoB. Rather, a relationship between a bank and a borrower does not impose a fiduciary duty on the bank. *In re Sallee*, 286 F.3d 878, 885 (6th Cir. 2002); *see also Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991) (noting that courts typically do not impose a fiduciary duty of disclosure on banks in debtor/creditor relationships).

McKeever's claim for violations of the Kentucky Financial Services Code largely reiterates her allegations that BoB breached its fiduciary duty and that it committed fraud. Because these allegations are insufficient for the reasons articulated above, she cannot rely on them to sustain her claims for violating the Kentucky Financial Services Code, and that claim fails as well.

### 7. Count Twelve: Conspiracy and Violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §1961

McKeever uses conspiracy as the predicate act for her RICO claim, alleging that BoB and others conspired to "deceive the Homeowners"; "to break Kentucky and federal law"; and to achieve "unlawful aims by unlawful means." R. 17 at ¶167. Although she states that "the actions of the Defendants constitute at least twelve separate acts of the conspiracy," it is not clear what acts she is referring to or the extent to which BoB was involved in these alleged acts. Although McKeever might be alleging that the defendants conspired to commit fraud, her fraud claims fail for the reasons discussed above. Thus, because McKeever relies on legal conclusions, not facts, in pleading conspiracy, her RICO claim fails. *See Iqbal*, 129 S.Ct. at 1950 (holding that an assertion of an unlawful agreement constituted a legal conclusion and was therefore not entitled to the assumption of truth).

### 8. Count 18: Kentucky Usury Statute

McKeever's claim under the Kentucky Usury Statute is barred by the applicable statute of limitations. Ky. Rev. Stat. Ann. § 360.020 (LexisNexis 2010) provides that any action must be commenced "within two years from the time the usurious transaction occurred." The instant claims were filed in February 2010, which was more than two years from the date of the May 2007 transaction. McKeever provides no legal support for her bare assertion that this statute of limitations does not apply.

### 9. Counts 15, 16, 19, and 20: Forgery Claims and Other Consolidated Case Issues

14

Counts Fifteen and Sixteen do not contain any factual allegations that would give rise to liability against BoB. Counts Nineteen and Twenty, although framed as counts of the complaint, are arguments regarding the management of this litigation, not separate legal claims. First, in Count Nineteen, McKeever alleges that the quiet title action (presumably Lexington 08-456) precluded the underlying foreclosure action against her (Lexington 09-362). The quiet title action has since been dismissed, and she provides no legal support for this assertion. Second, in Count Twenty, McKeever alleges that the "October 15, 2008 rescission of the mortgage precludes the foreclosure and the filing of the foreclosure is based in fraud and violates Rule 11." R. 17 ¶¶ 184-88. Because these are arguments regarding the case overall as opposed to claims against BoB, these counts will be dismissed as to BoB as well.

### III.   Conclusion

Accordingly, **IT IS ORDERED** that the motion to dismiss (R. 53 in 08-459) the third-party claims against Bank of the Bluegrass, Bill Allen, Mark Heron, and Jennifer Frye is **GRANTED** and those claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that this order and the underlying motion and briefs shall be docketed in Lexington Civil Action 09-362.

Signed on August 31, 2010 

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY